IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| ROBERT SHANE ANDREWS,<br><br>Plaintiff,<br><br>vs.<br><br>MISSOULA COUNTY, a political subdivision of the State of Montana, Michael McMeekin, Sheriff of Missoula County, and John Does I through X Missoula County Detention Facility Employees and Officers, Missoula County Attorney Fred VanValkenburg, and John Does XI through XV,<br><br>Defendants. | ) | CV 11-29-M-DWM<br><br><br><br>ORDER |

The defendants move for summary judgment on the plaintiff's claims. The plaintiff, Robert Andrews, claims that he was mistreated while he was detained at the Missoula County Detention Facility. He alleges negligence, negligent infliction of emotional distress, and use of excessive force under 42 U.S.C. § 1983. He also claims that Missoula County Attorney Fred Van Valkenburg improperly requested that he be detained at the Detention Facility, rather than the Montana State Hospital in Warm Springs.

Van Valkenburg moves for summary judgment, individually, on the basis of

absolute prosecutorial immunity. The remaining defendants, as well as Van Valkenburg, move for summary judgment on all claims. The Court grants summary judgment in favor of all the defendants.

## BACKGROUND

Andrews was arrested on February 11, 2008, at approximately 1:30 a.m. by the Missoula City Police Department on a city warrant. He was on probation at the time, following a guilty plea for felony burglary, two counts of criminal trespass, and obstructing a police officer. The warrant was issued for various probation violations, including possession of 12-gauge shotgun shells and marijuana use.

When city officers arrested Andrews, he yelled obscenities at them, became uncooperative, and kicked objects around the room. And, when he was placed in the patrol car, he struck "his forehead against the Plexiglass cage so hard that [the officer] thought [Andrews] would break it." Another officer reported, "We were unable to control [Andrews] due to his violent flailing . . . ."

Once at the jail, Andrews initially refused to exit the patrol car. He eventually exited the patrol car, though, and was placed in a spit hood and restraint chair. The time was approximately 1:40 a.m. Andrews had no visible injuries.

The detention officers continued to check on Andrews every 10 minutes. After more than three hours in the chair, Andrews was still fighting the restraints.

He later calmed down and was taken out of the restraints at 6:00 a.m.

As shown in a surveillance video, Andrews became disruptive and violent at about 8:20 p.m. the next day. Several detention officers filed incident reports recounting what had happened. Andrews had wrapped a cup in a towel and was swinging it at his cell light, attempting to break the light. The officers noticed that Andrews had broken the cup and that he was bleeding. The officers repeatedly told him to approach the food hatch so that he could be handcuffed. As surveillance video also shows, the officers told Andrews several times that he would be Tased if he did not comply. He refused, continued to yell obscenities at the officers, continued to act violent, and the officers eventually Tased him. After being Tased, Andrews was placed in a restraint chair at 8:30 p.m. He was removed from the chair at 9:54 p.m.

Andrews was then committed to the Montana State Hospital in order to determine whether he was fit to stand trial. While he was at the State Hospital, he assaulted a staff member badly enough that the staff member had to be transported by helicopter from Warm Springs to Missoula. On June 3, 2008, the state court found that Andrews was unfit to proceed, and it committed him to the State Hospital for 90 days.

Despite the court's order, the State Hospital sent Andrews back to the

Detention Facility not long after the court issued its order and well before the 90-day period had expired. Importantly, though, there is no evidence that Fred Van Valkenburg, the Missoula County Attorney, told or advised the State Hospital to send Andrews back. Instead, the State Hospital appears to have sent Andrews back on its own accord.

At a hearing to address the matter, Van Valkenburg advised the court that the State Hospital sent Andrews back to the Detention Facility because he was too violent. He also asked the Court to keep Andrews at the Detention Facility. The court, though, concluded that Andrews could not remain at the Detention Facility because the court had found him unfit to proceed. As a result, the court ordered that Andrews be sent back to the State Hospital.

A little over a month later, on July 31, 2008, the court ordered Andrews to be transported from the State Hospital to the Detention Facility because he had been restored to a condition that made him fit to proceed. The court sentenced him to three years imprisonment in the Montana Department of Corrections on September 22, 2008.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation and internal quotation marks omitted). "The party opposing the summary judgment may not rest on conclusory allegations, but must set forth facts showing there is a genuine issue for trial." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

## ANALYSIS

There are two motions for summary judgment. In the first, Van Valkenburg moves for summary judgment on the basis of absolute prosecutorial immunity. In the second, all the defendants move for summary judgment on the merits of Andrews' claims and on other bases. The Court grants both motions.

### I. Defendant Van Valkenburg

Van Valkenburg filed an individual motion for summary judgment, arguing that he is entitled to absolute prosecutorial immunity. The Court agrees and grants summary judgment in favor of Van Valkenburg.

Prosecutors enjoy "'absolute prosecutorial immunity'" for "'actions that are connected with the prosecutor's role in judicial proceedings . . . .'" *Lacey v. Maricopa Co.*, 649 F.3d 1118, 1128 (9th Cir. 2011) (quoting *Burns v. Reed*, 500 U.S. 478, 494 (1991)). The immunity extends to actions taken while performing

the "traditional functions of an advocate." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Stated differently, state prosecutors are absolutely immune for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. at 430–31.

When determining whether a prosecutor is protected by prosecutorial immunity, the court employs a "functional analysis, looking not at the office or title of the actor but at the act performed." *Lacey*, 649 F.3d at 1129 (citation omitted); *see Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009). "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* (citations and internal quotation marks omitted). Instead, the question is whether the prosecutor was functioning in the role of an advocate—that is, conducting activities intimately associated with the judicial process or, rather, functioning in the role of an administrator or investigator. *Imbler*, 424 U.S. at 430–31, *Burns*, 500 U.S. at 486. At a minimum, a prosecutor's courtroom conduct "clear[ly] . . . falls on the advocacy side of the line." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (citing *Buckley*, 509 U.S. at 274); *see also Waggy v. Spokane Co. Wash.*, 594 F.3d 707, 711 (9th Cir. 2010).

Here, Van Valkenburg is entitled to absolute prosecutorial immunity because the acts complained of are "intimately associated with the judicial process." *Imbler*, 424 U.S. at 430–31. In his complaint, Andrews alleges that Van Valkenburg improperly recommended that Andrews be detained at the Detention Facility, rather than the State Hospital. Andrews does not claim that Van Valkenburg improperly investigated Andrews' detention—or, more specifically, advised the State Hospital to send Andrews back to the Detention Facility. Instead, he contends that Van Valkenburg improperly presented argument and evidence to the Court. Those actions are, by definition, advocacy-oriented actions that are "intimately associated with the judicial process." *Imbler*, 424 U.S. at 430–31; *see Mink*, 482 F.3d at 1261("It is clear that a prosecutor's courtroom conduct falls on the advocacy side of the line." (citing *Buckley*, 509 U.S. at 274)); *Waggy*, 594 F.3d at 711. As a result, Van Valkenburg is absolutely immune from Andrews' claims.

The outcome might have been different if Van Valkenburg had told the State Hospital to transport Andrews back to the Detention Facility, in violation of the state court's order. Had he done so, he might have been acting beyond his prosecutorial authority. But Andrews has not come forward with any evidence whatsoever to support that argument. Instead, as Andrews appears to concede, Van

Valkenburg simply explained to the Court why the State Hospital had sent Andrews back to the Detention Facility and why he thought Andrews should stay there.

Moreover, in his response brief, Andrews offers nothing more than conclusory allegations. He has not come forward with any specific facts or evidence to refute prosecutorial immunity.

Since Van Valkenburg is immune from Andrews' claims, the Court grants summary judgment in his favor.

**II. Remaining defendants**

The remaining defendants argue they are entitled to summary judgment on a variety of bases. First, they argue they are entitled to summary judgment on all claims because the undisputed facts disprove Andrews' allegations of excessive force, negligence, and negligent infliction of emotional distress. Second, Missoula County argues that it is entitled to summary judgment on Andrews' § 1983 claim under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Third, Sheriff Mike McMeekin claims that he is entitled to summary judgment on Andrews' § 1983 claim because he did not "integrally participate" in any of the alleged acts. Fourth, the named defendants argue that the John Doe defendants should be dismissed because Andrews failed to name them

within the required time period. Finally, Missoula County argues that it is immune from exemplary and punitive damages. The Court agrees with the defendants on all counts and grants summary judgment in their favor.

**A. Merits of Andrews' claims**

Andrews' claims against the named defendants, other than Van Valkenburg, stem from his alleged mistreatment at the Detention Facility. Andrews claims those defendants used excessive force, were negligent, and negligently inflicted emotional distress.

The United States Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989), sets out the applicable standard for evaluating a pre-trial detainee's excessive force claim. *Hunter v. Co. of Sacramento*, 652 F.3d 1225, 1231 n.6 (9th Cir. 2011) (quoting *Gibson v. Co. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002)). While the Due Process Clause protects pretrial detainees from the use of excessive force that amounts to punishment, the Supreme Court has not determined whether pretrial detainees are protected under the Fourth Amendment. The Ninth Circuit, however, has held that the Fourth Amendment sets out the "applicable constitutional limitations" for considering claims of excessive force during pretrial detention. *Gibson*, 290 F.3d at 1197 (citing *Pierce v. Multnomah Co.*, 76 F.3d 1032, 1043 (9th Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996)); *see*

*also Lolli v. Co. of Orange*, 351 F.3d 410, 415 (9th Cir. 2003).

The Ninth Circuit evaluates a pretrial detainee's claim under an "objective reasonableness standard." *Lolli*, 351 F.3d at 415 (citing *Pierce*, 76 F.3d at 1043). The Supreme Court explained in *Graham* that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." 490 U.S. at 397. This analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 396. Courts must be attentive to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985); *see Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc) (analyzing whether use of a Taser constituted excessive force).

The Ninth Circuit has noted, though, that "[i]n the context of pretrial detention rather than arrest, it is clear that all the factors mentioned in *Graham* —whether the suspect is resisting arrest or attempting to flee, for example—will not necessarily be relevant." *Gibson*, 290 F.3d at 1197 n.21. Regardless, the "most

important" factor is whether the individual posed an "immediate threat to the safety of the officers or others." *Mattos*, 661 F.3d at 441.

"Finally, the *Graham* Court admonished courts to examine the circumstances underlying a Fourth Amendment claim from the viewpoint of the reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight.'" *Gibson*, 290 F.3d at 1198 (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Since juries must "nearly always" sift through disputed factual contentions, the Ninth Circuit has noted that "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Lolli*, 351 F.3d at 415 (citations and internal quotation marks omitted). To defeat summary judgment, a plaintiff "must show that a reasonable jury could have found that the officers' use of force was excessive." *Id.* (citation omitted).

Here, the detention officers' use of the restraint chair and Tasing were both reasonable, and a reasonable jury could not conclude otherwise. Andrews was placed in a restraint chair twice, each time after he had been uncooperative and

violent. Unrestrained, Andrews was a danger to himself and others. He was first restrained after he had kicked objects around a room and struck "his forehead against the Plexiglass cage so hard that [the officer] through [Andrews] would break it." One officer said, "We were unable to control [Andrews] due to his violent flailing . . . ." The video evidence supports that observation. Andrews was restrained a second time after attempting to break his cell light, injuring himself, and eventually being Tased.

When Andrews was restrained, he was restrained for a reasonable period of time. He was first restrained for about four hours and 20 minutes, but the restraint log shows that he was still fighting the restraints—and still a possible threat to his own safety—more the 3 hours after being restrained. The second time he was restrained, he was restrained for less than one hour and 30 minutes.

As to the Tasing, the detention officers Tased Andrews in response to his violent, uncooperative behavior. Andrews had used a cup wrapped in a towel to try and break the cell light. In the course of doing so, he injured himself and there was blood in his cell. The officers ordered him to approach the door and put his hand through the food hatch so that they could handcuff him. They warned him several times that, if he failed to do so, they would Tase him. Instead of complying, Andrews shouted obscenities at the officers and continued his

aggressive behavior. Only then did the officers Tase him.

The officer's actions were reasonable under *Graham* and Ninth Circuit precedent. The undisputed facts show that Andrews (1) "pose[d] an immediate threat to the safety of the officers or others [including himself]" and (2) "actively resist[ed]" the officers. *Graham*, 490 U.S. at 396; *Mattos*, 661 F.3d at 441 (noting that whether the individual posed a threat is the most important factor); *Gibson*, 290 F.3d at 1197. The force used against Andrews was no more than that which would have been used by a "reasonable officer" in a "tense, uncertain, and rapidly evolving" situation. *See Gibson*, 290 F.3d at 1197 (citing *Graham*, 490 U.S. at 396). Given the facts and circumstances, no "reasonable jury [would find] that the officers' use of force was excessive." *See Lolli*, 351 F.3d at 415.

For similar reasons, Andrews' negligence and negligent infliction of emotional distress claims fail because the officers' conduct was that "of a reasonable and prudent person under the circumstances." *Scott v. Henrich*, 938 P.2d 1363, 1368 (Mont. 1997) (differentiating between negligence standard and fourth amendment standard in an excessive force case). Further, Andrews' negligent infliction of emotional distress claim also fails because he has not come forward with any evidence that he suffered "severe" or "serious" emotional distress. *See Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 222 (Mont. 2008); *Renville*

*v. Fredrickson*, 101 P.3d 773, 775–76 (Mont. 2004); *Spreadbury v. Bitterroot Pub. Lib.*, 2011 WL 4639917 (D. Mont. July 28, 2011).

**B. Missoula County and *Monell***

Missoula County is further entitled to summary judgment because there is no evidence that the County had a "deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation" that Andrews allegedly suffered. *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95); *see generally Peschel v. City of Missoula*, 686 F. Supp. 2d 1116–17 (D. Mont. 2009).

A county cannot be held liable under § 1983 on a theory of respondeat superior. *Id.* (citing *Monell*, 436 U.S. at 691). Thus, a county is not liable under § 1983 merely because an officer applies a policy in an unconstitutional manner. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) (citation omitted). Instead, the plaintiff must show that the county "*itself* acted deliberately or culpably." *Peschel*, 686 F. Supp. 2d at 1116 (citing *Bd. of Co. Commrs. of Bryan Co. v. Brown*, 520 U.S. 397, 403 (1997)). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Here, Missoula County attached its policy regarding the use of force as an

exhibit to its motion for summary judgment. The terms of the policy are reasonable. Force, whether by restraint or Taser, is used on an escalating basis and only when less invasive measures are not effective. As the policy states, "Force should be limited to the minimum amount necessary to control the situation. Force shall not be used as punishment, harassment, coercion or abuse of inmates." The policy then discuss in detail how both restraint chairs and Tasers are to be used.

Andrews has failed entirely to show how these policies caused the alleged excessive force. *Ewing*, 588 F.3d at 1235. Andrews simply claims, "It is undisputed that Andrews was subjected to certain acts by Missoula County employees. That fact *ipso facto* constitutes prima facie evidence of Missoula County's policies, customs or practices, etc." Andrews provides no support for his position, and he is flat wrong. In order to survive summary judgment, he must show there is a genuine issue of material fact as to the link between Missoula County's customs or policies and the alleged violation. *See Hutchinson*, 838 F.2d at 392; *Peschel*, 686 F. Supp. 2d at 1116. He has not done so, and his § 1983 claim against the County fails.

**C. Sheriff McMeekin and "integral participation"**

Andrews names Sheriff Mike McMeekin as a defendant, but the only allegation against Sheriff McMeekin is that "Missoula County Detention Facility

employees were wholly under the supervision, of . . . Sheriff Michael McMeekin." As discussed above, though, a § 1983 claim cannot be based on a theory of respondeat superior. *Whitaker*, 486 F.3d at 581. For Sheriff McMeekin to be liable under § 1983, Andrews must show that Sheriff McMeekin "integral[ly] participat[ed]" in the alleged violation. *Torres v. City of L.A.*, 548 F.3d 1197, 1206 (9th Cir. 2008) (citations omitted).

"Integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation." *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)).

Here, Sheriff McMeekin is entitled to summary judgment on the § 1983 claim because there is no evidence that he "integral[ly] participat[ed]" in the alleged violation. Andrews claims only that Sheriff McMeekin supervised the officers and that he will come forward with additional facts at trial. Andrews, though, must come forward with facts now to survive summary judgment, and he has not done so. *See Hutchinson*, 838 F.2d at 392. As a result, his § 1983 claim against Sheriff McMeekin fails.

**D. Unnamed defendants**

The defendants argue that the claims against the John Doe defendants should be dismissed because Andrews has failed to specifically name them within

the time allotted by the scheduling order. Under that order, the deadline for amending pleadings was June 15, 2011.

Andrews does not dispute the fact that he has failed to timely name the John Doe defendants. Instead, he puts forward two counter-arguments:

> 1. “It is undisputed that Plaintiff is mentally incompetent quite often, which makes it extremely difficult for counsel to meet the deadlines imposed herein. That fact would constitute good cause for Plaintiff to amend the complaint and thus, the Doe Defendants should not be dismissed yet.”
>
> 2. “Furthermore, the remaining Defendants do not have standing to represent the interests of the Doe Defendants and thus, the Court should not grant Defendants’ motion for summary judgment on any issue regarding the Doe Defendants.”

The first argument fails because Andrews has not shown how his mental incompetence affected his ability to specifically name the defendants. Andrews offers only a conclusory defense.

The Court need not address Andrews’ second argument because the Court may sua sponte dismiss an unnamed party under Federal Rule of Civil Procedure 4(m) if the plaintiff—absent good cause—does not specifically name the party within 120 days after the complaint is filed. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000); *Sedaghatpour v. Calif.*, 2007 WL 2947422 at *2 (N.D.Cal. Oct.9, 2007) (“[T]he Court may dismiss ‘Doe’ defendants who are not identified and

served within 120 days after the case is filed pursuant to [Rule] 4(m).”). The Court must, however, ensure that the plaintiff has been put on notice before it dismisses a complaint under Rule 4(m). *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005).

Here, the defendants’ motion put Andrews on notice that the Court might dismiss the unnamed defendants. Importantly, Andrews acknowledges his obligation to show cause why the unnamed parties should not be dismissed, and he attempts to make that showing. As discussed above, though, he has failed to do so because he has failed to show how his mental incompetence—or any other factor—hampered his ability to specifically name the defendants. Accordingly, the Court dismisses the unnamed defendants.

### E. Exemplary and punitive damages

Andrews concedes in his response brief that his claim for exemplary and punitive damages should be dismissed. *See* Mont. Code Ann. § 2–9–105 (“The state and other governmental entities are immune from exemplary and punitive damages.”). Accordingly, the Court grants summary judgment in favor of the defendants as to exemplary and punitive damages.

## CONCLUSION

For the reasons above, the Court grants summary judgment in favor of all

defendants as to all claims.

IT IS ORDERED that the defendants' motions for summary judgment (doc. 10, 14) are GRANTED. The Clerk of Court is directed to enter judgment in favor of the defendants.

Dated this 22nd day of March 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT